## GAULT v. SPEARS.

No. 17208.	Opinion Filed Nov. 9. 1926.

Rehearing Denied June 14, 1927.

**1. Reformation of Instruments—Offer to Rescind Unnecessary.**

An action brought solely for the purpose of reforming a purported written contract to make it express the actual contract between the parties, presents a question of equitable cognizance. And in such an action an offer of plaintiff to rescind is not necessary.

**2. Appeal and Error—Review of Evidence in Equity Cases.**

In cases of purely equitable cognizance it is the duty of the reviewing court, on appeal, to consider and weigh the evidence.

**3. Same — Reformation of Instruments — Sufficiency of Evidence.**

The established rule is that where a plaintiff seeks a reformation of a purported written instrument because of fraud of his adversary, the evidence must be clear, convincing, and satisfactory to authorize a reformation. And, where an appeal is prosecuted from a judgment reforming a written instrument, and the record presents evidence clear, convincing, and satisfactory, that the purported written contract was not, in fact, the contract actually agreed upon, but was the result of fraud and overreaching of the other party, the judgment will not be disturbed on appeal because there is conflicting evidence.

**4. Same—Judgment Sustained.**

The record satisfactorily and convincingly supports the judgment, and requires that it be affirmed.

(Syllabus by Shackelford, C.)

Commissioners' Opinion, Division No. 4.

Error from District Court, Carter County; W. F. Freeman, Judge.

Action by W. S. Spears against W. B. Gault. Judgment for plaintiff, and defendant appeals. Affirmed.

George N. Otey and Cruce & Potter, for plaintiff in error.

Brett & Brett, for defendant in error.

Opinion by SHACKELFORD, C. In the trial court the defendant in error was the plaintiff, and the plaintiff in error was the defendant. These parties will be referred to herein as plaintiff and defendant, as they appeared in the court below.

The plaintiff filed his action to reform a written instrument. He charges in his petition that both he and defendant owned stock in the Spears-Gault Motor Company, a corporation; and that he, plaintiff, purchased the stock of defendant at an agreed price of $26,880.11, of which sum $19,500 was paid in cash, and the balance was paid by plaintiff assuming certain indebtedness of defendant owing to W. F. Spears (brother of plaintiff) amounting to $7,330.11, and that the trade was consummated. That after the trade was consummated the defendant mentioned that the income tax for 1921 and 1923 had not been adjusted, but was in process of adjustment, and had been estimated at $2,255 for 1921. and $889 for 1923, and money set apart by the corporation to pay such sums, and that if the adjustment resulted in taking less money, he, defendant, should be entitled to have returned to him 48 per cent. of the amount saved, since he had held such percentage of the stock, and this proposition the plaintiff agreed to, and the defendant thereupon stated that he would have a memorandum agreement prepared for them, plaintiff and defendant, to sign; and that later, the defendant produced a writing for plaintiff's signature, at a time when he was tired and suffering from exhaustion and a severe headache, and did not carefully examine the writing, but was advised by defendant that it embodied their oral agreement with reference to division of the money set apart to pay income tax; that he, plaintiff, had confidence in the statements of defendant with reference to what the writing contained and relied upon defendant's statements as to the contents of the writing and signed it; that soon thereafter the plaintiff discovered that the writing contained other matter not orally agreed upon, and to which he had never assented, in this language:

"And the said W. S. Spears does agree and does hereby assume all obligations of said W. B. Gault to the Spears-Gault Motor Company."

That the effect of such language is to render plaintiff liable for any such sums as defendant is personally obligated to Spears-Gault Motor Company, when in truth and in fact plaintiff had never agreed to become responsible for the defendant's personal obligations to the company. Plaintiff charges that he had confidence in the defendant's statements and representations about what the writing contained, and relied upon the representations, which were false and fraudulent, and attached his name to the instrument which binds him to an obligation to which he never did agree; and which he would not have signed had he known what the writing contained. That under the circumstances related he was deceived and mis-

led purposely and intentionally by the defendant, to his injury and damage, and that he has no remedy at law, and that if the instrument is not reformed to correspond with the oral agreement he will be cheated and defrauded out of whatever sum or sums the defendant may owe the Spears-Gault Motor Company. He further alleges that he called upon the defendant to rectify the instrument and the defendant refused to make the correction. This instrument, signed, is dated June 14, 1924, and a copy is attached as an exhibit. The petition was filed in the district court of Carter county on the 26th day of June, 1924. The prayer is for reformation of the instrument by striking out the offending clause, etc.

The defendant answered denying all the allegations of the petition, and affirmatively alleging that the writing complained of embodies the agreement between himself and the plaintiff by which the defendant sold and the plaintiff purchased his stock in the Spears-Gault Motor Company, and prays judgment.

By request of the defendant the cause was tried to a jury resulting in a finding by the jury in favor of the plaintiff and against the defendant. The court adopted the finding of the jury and rendered judgment for plaintiff, reforming the instrument by striking out the clause which appeared to have the effect of obligating the plaintiff to assume and pay any obligations of the defendant to the Spears-Gault Motor Company. The defendant appeals. The effect of the assignments of error is to charge that the judgment of the court is against the clear weight of the evidence, and is not authorized by law.

This suit is clearly a suit for the reformation of a written instrument to make it correspond with what the plaintiff insists was the original oral agreement between the parties. The cause was tried to a jury and a verdict returned; but it is a case of purely equitable cognizance. It is so well established that a suit for reformation of a writing is an equitable proceeding, that citation of authorities would be superfluous and unnecessary. In the examination of the appeal it becomes the duty of the reviewing court to apply the equitable principles. The rule in equity cases on appeal is that it is the duty of the reviewing court to examine and weigh the evidence applying rules of equity in determining whether the judgment is supported to that degree required in a case where reformation of a writing is sought. The sufficiency of the plaintiff's petition has not been assailed except upon the ground that plaintiff does not, in his pleading, offer to place the defendant in the same position he found him before the instrument sought to be reformed was signed, that is, there is no offer to establish the status quo. We know of no rule that requires a plaintiff, in a suit to reform a written instrument, to also offer to rescind. It seems that in suits to reform an instrument appearing upon its face to be a valid, binding contract in writing, the whole purpose is to so change the writing as to make it correspond in its terms with what the actual contract between the parties was. That being so, there is no occasion to tender a rescission of the contract as actually made, as is alleged by the complaining party. It seems sufficient to say that the instant action is a suit to reform an instrument purporting upon its face to be a contract in writing, so as to make it reflect the actual agreement made, and is in no sense an action to rescind; hence it was never necessary to offer to re-establish the status quo.

The evidence upon the part of the plaintiff tends to show that plaintiff, W. S. Spears, and defendant, W. B. Gault, each owned 48 per cent. of the stock of the Spears-Gault Motor Company. and these parties had under consideration a deal by which Spears was to buy and Gault to sell his stock in the motor company. It seems that both were active in the management of the business of the company, and some difference had arisen between them about the business policy of the company; Spears wanting to discount certain negotiable paper, and Gault thinking the discount rate too great. There seems to have been no personal disagreement. The Spears-Gault Motor Company was an Oklahoma corporation, and Gault had been elected the business manager. These parties had the matter of the value of Gault's stock under consideration and Spears had offered him $18,000 cash for his stock. Gault countered with a proposition to accept $19,500 cash and certain obligations Gault owed to the brother of Spears. It appears that the obligations owing by Gault to Spears' brother were two notes, one for $2,000 and one for $5,000, the face of the notes, and the accumulated interest, all amounting to $7,330.11. Gault's proposition was not at once accepted, but on the morning or early afternoon on the 14th of June, 1924, Spears accepted the Gault proposition and assumed the notes aggregating $7,330.11, and delivered to Gault two checks amounting to $19,500 and the Gault stock was delivered to Spears. Thus it seems that the sale and purchase of the Gault stock was completed, according

to Spears, on the morning or early afternoon of June 14, 1924. After this transaction Gault called Spears' attention to the fact that certain moneys of the corporation had been set apart to pay income tax for 1921, the sum of $2,275, and for 1923, the sum of $889, and that upon complete and final adjustment there might be a rebate, and that he, Gault, should be entitled to 48 per cent. of any such rebate since he owned that percentage of the stock at the time the money was set apart. W. S. Spears agreed that this was fair and should be done, and then it was agreed that a memorandum of agreement should be drawn and signed to such effect. This matter was submitted to E. M. Cogwell, bookkeeper for the motor company, to prepare the memorandum agreement to be signed by Spears and Gault, but he did not want to prepare it and did not prepare it. Mr. Cogwell testified that at the time he was "asked to write a contract or agreement in regard to a refund on some income taxes," Spears doing most of the talking, but they, Spears and Gault, were both there and both were talking about it. Mr. Gault then suggested that he would get his attorney to prepare the memorandum, and Spears went to Healdton and was gone until late in the evening, returning around eight o'clock. When he got back Gault was at the motor company office with the memorandum, and told Spears that he had the contract ready for them to sign, and passed it to Spears who, after asking if it embodied what had been agreed upon with reference to rebate on income tax, and being assured by Gault that it did, signed both the original and a copy and had the instrument witnessed by Murdock and his wife, who were in the office at the time. Spears testified he was in a bad physical condition, being tired and hot and suffering with a headache, and did not examine the instrument, but had confidence in and relied upon the truthfulness of Gault's representations with reference to the income taxes, and signed without reading. A few days afterwards he found that the writing bound him to discharge the obligations of Gault to the motor company, and went to Gault as quickly as he could and called Gault's attention to the matter, and Gault responded, according to Spears, in this language: "Well, you signed the contract," and declined to do anything about it. Spears says that he never at any time agreed to take care of Gault's obligations to the motor company in addition to other considerations for Gault's stock. He says that Gault's personal obligations to the motor company were never referred to in any of the negotiations.

The testimony of Murdock and his wife, who signed the agreement as witnesses, is to the effect that a few days afterwards Gault told them that Spears and Sam McCullough thought they had put something over on him (Gault), but he (Gault) had put something over on Spears in getting him to sign the instrument.

The signed instrument was put in evidence. It recites that for and in consideration of $21,500 Gault agrees to sell and Spears to buy Gault's stock and all Gault's interest in and to the Spears-Gault Motor Company, a corporation, and then recites:

"And he said Dr. W. S. Spears does agree and does hereby assume all obligations of the said W. B. Gault to the said Spears-Gault Motor Company, an Oklahoma corporation."

This is the clause which the plaintiff sought to strike out of the signed instrument.

Mr. Gault testified in his own behalf, the effect of which is about as follows: That Spears made a proposition to buy Gault out by paying him $19,000 cash and $2,000 in notes held by Spears' brother. This proposition Gault declined. Gault then made a proposition to sell for $19,500 cash and the $2,000 in notes and Spears to take care of the $5,000 note owing to Spears' brother, and also some notes at the bank which Gault had indorsed for the company. This was declined at the time, but was later accepted by Spears. Gault, however, said in answer to a question:

"Q. Go ahead. A. So I said, 'I will take $19,500 and those $2,000 notes, which makes $21,500,' and he said he wouldn't pay it, etc. A day or two afterwards Spears said, 'You had better go ahead and trade with me,' and Gault told him that was the last dime he would trade on, and Spears said, 'Wait a minute,' and then he went over on the far side and then came back with the $2,000 notes and the two checks for the $19,000."

The quotations are from Gault's testimony. The checks show that they were in the aggregate sum of $19,500. Gault said to Spears: "We want a contract. I told him we had borrowed about $11,000 from the bank as individuals and not as a company, and he said 'all right'," and Spears asked Cogdale to draw the contract, and he said he didn't think he could draw it, so Gault said: "All we want is our contract about the deal and the specifications about this income tax. * * * Dock won't let me keep this money he is holding back. * * *" Then said: "That was the trade; he was to keep this money for the income tax which we

were going to have straightened up later on." Dr. Spears was to take care of the outstanding indebtedness of the company after Gault sold out, and was to assume Gault's personal liabilities to the company. "Q. Was that matter discussed there prior to the time the contract was drawn? A. That was in the trade when we closed the deal; that he was to give me so much money now, and for me to step down and out. * * * I didn't even get my half month's salary. * * * I was just to quit right then, and if we didn't use all of this other money for the income taxes, I was to have half of that." He then testified that Spears read the contract and signed it. He was asked: "Q. Does that embody all of the agreement had by and between you and Dr. Spears for the purchase of your stock? A. Yes, sir." The instrument attacked was introduced in evidence as Exhibit "C". Gault was shown this exhibit and asked: "Q. Does that embody all of the agreement had by and between you and Dr. Spears for the purchase of your stock? A. Yes, sir. Q. Does that contract that was introduced in evidence here as plaintiff's Exhibit 'C' speak the trade exactly as it was gotten up by and between you and Dr. Spears? A. Absolutely." These answers were plainly erroneous. It must have been apparent to both court and jury that Gault was misstating the facts. Spears himself said that the full consideration was $19,500 cash and the assumption of $7,000 in notes with accrued interest, all amounting to $26,830.11. Gault testified to about the same effect in that he said in substance that he received $19,500 cash and two notes amounting to $2,000 and Spears to assume a $5,000 note owing by Gault to Spears' brother. Gault testified further that Spears was to hold him harmless from personal indorsement for the motor company, and to assume all of his personal obligations to the company. The instrument signed recites a consideration paid by Spears to Gault, of $21,500, and Spears' assumption of Gault's personal liability to the motor company, and an agreement that Gault should have 48 per cent. of any of the tax money saved, as consideration for the stock. According to Gault's own testimony, the written signed instrument does not speak the truth about what the deal was between him and Spears, by several thousand dollars, although he answered, "absolutely," when asked if it spoke the truth. How much Gault's personal liability was to the motor company, we are not informed with certainty. There does appear in the record, however, that he has been sued by the motor company seeking to recover the sum of $1,576.12. If this were the amount of Gault's personal obligations to the motor company, according to the instrument the consideration for Gault's stock would be $21,500, plus this claim, or the sum of $23,076.12, and the agreement to repay 48 per cent. of income tax refund. Gault's positive statements about the written instrument speaking the truth were so inconsistent with other parts of his testimony that perhaps the court and jury were inclined to disregard his statements.

Mr. Gault, in his testimony, relates his conversation with Murdock and his wife, in effect denying that he had said he put something over Spears by getting him to sign the instrument. He also denies that he made any false statements or representations to Spears about the written instrument.

In the cross-examination of Gault he testified that he and Spears had signed notes to the bank amounting to about $11.000, and insisted that the language of the signed instrument also obligated Spears to assume and pay these notes.

From the record we learn that, according to Spears' idea of the contract about the sale and purchase of the Gault stock in the motor company, Spears was to give Gault $19,500 in cash, $2,000 in notes owing by Gault to Spears' brother, and Spears to assume another note owing by Gau't to Spears' brother amounting to about $5,330, and the agreement was oral and completely executed. That as an afterthought Spears agreed that Gault should have returned to him 48 per cent. of all money saved on the income tax for 1921 and 1923. and the memorandum in writing should cover this item of their agreement.

According to Gault, he sold Spears his stock for $19,500 cash, $2,000 in notes which were delivered to him, and in addition thereto Spears was to assume and pay Gault's obligation to Spears' brother amounting to $5,000 and accumulated interest, and to assume and pay all of Gault's personal obligations to the motor company, which, as far as we can tell from the record, amounts to $1,576.12 (cross-petition of Gault dismissed), and Spears to take care of $11,000 individual obligations of Gault and Spears owing by them to some bank. or, in other words, Spears was to pay to the motor company $1,576.12 and relieve Gault of $5,500 personal obligation of Gault to the bank in addition to $26,830.11 cash and notes of Spears' brother. all told, $33,906.33, and Gault to have his rebate on money saved by adjustment on the income tax. The signed written instrument recites a considera-

tion of $21,500, and Spears to assume all obligations of Gault to the motor company, and provides for a rebate of income tax. It seems to be plain that, notwithstanding the testimony of Gault to the contrary, the signed instrument did not recite and contain the real contract made by Spears and Gault. If Spears' evidence reflects what the contract was, the instrument attacked was wrong. If Gault's testimony reflects what the contract was, the instrument attacked fell several thousand dollars short of expressing the consideration for which the stock was sold to Spears. Gault says in his testimony that the written instrument speaks the absolute truth as to the purchase and sale agreement. If so, his testimony otherwise is seriously in conflict with it. Both cannot be correct, however honest Gault may have intended to be in making the statements. Perhaps he was wrong in both particulars. Both court and jury seem to have thought so. The jury thought so, and returned a finding for plaintiff; and the court thought so, and adopted the finding.

Spears says he did not read the instrument before he signed it, because he was hot, tired, and sick, and believed that Gault would not deceive him about what the writing contained; that Gault told him it covered their agreement about the income tax rebate and he believed it, but would not have signed it if he had known that it obligated him to pay Gault's personal obligations to the motor company. It is certain that the instrument signed did not express the contract as orally agreed to, no difference whether Spears was right or Gault was right about what the contract really was. It seems from all the facts and circumstances presented about as certain that Spears did not read the instrument before he signed it. The court and jury evidently concluded that the purpose Gault had in mind was not so much to write into the instrument what the oral agreement was as to get Spears to sign an instrument obligating him to pay Gault's personal obligations to the motor company, and purposely and intentionally mislead Spears into signing such instrument, when in fact he had made no agreement with Gault to discharge Gault's obligations to the motor company as a part of the consideration for Gault's stock. A study of the record leads us to say that this conclusion is amply supported by it. That being so, was the judgment of the trial court striking out the offending clause, and reforming the instrument to that extent, justified by the law?

It seems very plain that for Spears to sign the instrument without reading it was neg-ligence upon his part. If reformation of the instrument is denied, the judgment must rest upon the negligence of Spears, since it is plain that he never entered into an agreement with Gault to pay his obligations to the motor company. He was negligent in that he trusted Gault to prepare the memorandum and took his word for it that it contained their agreement as to the rebate on income taxes and nothing more. It is plain that Spears thought that Gault was telling him the truth about what the instrument contained, when in fact Gault was deceiving him about the contents of the instrument offered to Spears for his signature. It satisfactorily appears from the record, and the trial judge so concluded, that Spears and Gault had agreed that Gault was entitled to a rebate of 48 per cent. of any money saved on adjustment of income tax, and Spears relied upon Gault to have a memorandum of agreement prepared for them to sign expressing this agreement, and Gault presented the writing and told Spears, in effect, that this instrument embodied their agreement about the income tax and Spears signed it without reading it, because he believed Gault had told him the truth about its contents, when he would not have signed if he had known what it actually contained. In other words, it satisfactorily appears from the record that Gault had practiced a deception upon Spears by wrongfully and fraudulently inducing him to sign the instrument, binding Spears to a matter which he had never agreed to be bound. Under these circumstances, should a court of equity relieve against the instrument by reforming it?

In 23 R. C. L. pages 351-2, sec. 48, the general rule applicable here is stated as follows:

"Where one party relies on the other to draw the instrument according to the terms of the agreement, and the other party or his agent or the scrivener selected by him either through mistake or fraud fails to do so, the fact that the first party failed to read over the instrument before signing is not such negligence as will prevent his getting relief by reformation."

In Archer et al. v. California Lumber Company, 33 Pac. 526, the Oregon court said:

"When one party to a contract intrusts to and depends upon the other party to have the contract, as made by them, reduced to writing, the party intrusted with such duty must act with the utmost good faith; and if the contract, as written, is not the one which was verbally agreed upon, and the party was induced by the confidence reposed

in the other to execute the contract as written, believing it expressed the real contract made, equity will not permit it to stand."

In Chisum v. Huggins, 55 Okla. 423, 154 Pac. 1146, this court had under consideration a case of rescission, but the principle involved seems to be the same. The court said:

"A contract obtained by the fraudulent representation or conduct of one of the parties thereto should not be enforced, if it satisfactorily appears from the evidence that the party seeking a rescission has been misled in regard to a material matter by such misrepresentations or conduct to his injury; and it matters not that the party so misled may have been in some degree negligent, for it is not just, nor equitable, for a person who has deceived another to challenge his credulity or shield himself from the consequences of his own misconduct behind the faith and confidence reposed in him by his victim."

This statement of the law was quoted approvingly in Myler v. Fidelity Mutual Life Ins. Co. of Philadelphia, 64 Okla. 293, 167 Pac. 601. Also in that case the court quoted approvingly from Summers v. Alexander, 30 Okla. 198, 120 Pac. 601, 38 L. R. A. (N. S.) 787, this language:

"Where it is sought to enforce a contract and a plea of fraud is interposed, the defense will be sustained, even though the defendant may have been wanting in ordinary prudence in relying on the representations of the other contracting party as to the tenor or contents of the writing; the rights of innocent parties not intervening. They might still insist that it was not their contract."

Other cases holding to like effect are: In re Spann, 51 Okla. 309, 152 Pac. 68; Bostwick v. Mutual Life Ins. Co., 116 Wis. 392, 92 N. W. 246, and authorities there cited. In the last case above mentioned the Wisconsin court quoted approvingly the rule laid down in 9 Cyc. 390, where it is said:

"Of course, if the other party induces the signer to sign the paper without reading it and to rely on his statement of the contents, this may give the signer a right, if the statement was fraudulent, to avoid the contract as against him on the ground of fraud."

Some of the cases deal with the quantum of proof necessary to reform. In 23 R. C. L. 367, this general statement is made:

"In attempting to lay down general rules as to the quantity, quality, and kind of evidence which must be adduced, the courts have employed many and varying expressions. It is said that the proof must be 'very clear,' 'clear and satisfactory,' 'entirely clear and most satisfactory,' 'the clearest

and most satisfactory,' and so on; but closes by saying: 'When the mind of a judge is entirely convinced upon any disputed question, whether of fact or law, he is bound to act on the conviction. Relief will not be denied merely because there is conflicting testimony.' "

Thus, it appears that the authorities generally require the evidence to be "very clear," "clear and satisfactory," "entirely clear and most satisfactory," "the clearest and most satisfactory," etc., but when the judge is entirely convinced, he should "act on the conviction." This seems to have been the rule had in mind by the trial judge, as indicated by his directions to the jury. The instructions given were to the effect that "if the evidence given in this case appears clear and convincing to you that the plaintiff's contentions are true," then the verdict should be for the plaintiff; but if the evidence did not appear strong and convincing to the jury, the verdict should be for defendant. It seems that the jury found the evidence clear and convincing under these rules given by the trial judge, since it rendered a verdict for plaintiff; and also the evidence must have been clear and convincing to the trial judge, since he adopted the finding of the jury and entered judgment for plaintiff reforming the instrument. Examination of the record on appeal clearly convinces the writer of this opinion that Spears' contentions presented the real truth of the situation. The quantum of proof seems to be entirely sufficient to require a reformation of the instrument sought to be reformed under the rules announced.

The judgment is affirmed.

By the Court: It is so ordered.

Note.—See under (1) 34 Cyc. pp. 904, 945 (Anno), 962.    (2) 4 C. J. p. 897, §2867; 2 R. C. L. p. 204; 1 R. C. L. Supp. p. 442; 4 R. C. L. Supp. p. 91.    (3) 4 C. J. p. 900; §2870; 34 Cyc. pp. 984, 998; 23 R. C. L. p. 367; 3 R. C. L. Supp. p. 1325; 5 R. C. L. Supp. p. 1242.    (4) 4 C. J. p. 1129, §3122; 34 Cyc. p. 984.