Roy G. GARRETT, Plaintiff in Error,

v.

Mrs. POLLOCK, one and the same person as Mrs. J. C. McCalla, Defendant in Error.

No. 37028.

Supreme Court of Oklahoma.

July 10, 1956.

Carl W. Davis, Oklahoma City, for plaintiff in error.

W. Custer Service, Jack R. Parr, Edmond, for defendant in error.

CORN, Justice.

Plaintiff brought this action seeking to recover $843.60, interest and costs allegedly due and owing by defendant under a written agreement. The petition alleged execution of a written contract (August 11, 1952) under terms of which plaintiff was to furnish labor and material to construct a house upon defendant's lots; defendant was to pay costs of labor and materials, plus 10 percent of total as a bonus or supervision fee; that plaintiff had performed all conditions of the contract and the completed structure had been approved by defendant on May 23, 1953, but defendant refused to pay according to terms of agreement.

After disposition of various motions and demurrers plaintiff filed an amended petition alleging execution of original contract, but that on December 17, 1952 parties entered into amendment thereto, providing:

"I, Roy G. Garrett, promise to finish the house at 727 South Boulevard in Edmond, Oklahoma, as follows: The Prior contract will be paid as prescribed therein to this date, December 17, 1952. In addition to this, the sum of $1,000. (One thousand Dollars) will be paid for and upon completion of the following. As per conversation with Mrs. J. C. McCalla I agree to do the following:"

Thereafter this amendment enumerated some 24 distinct items or jobs plaintiff was required to complete, and the type and kinds of material to be used, in order to finish the building. This agreement also stated " * * For completion of this job I am to take and use the materials now on the job and furnish all additional materials as herein prescribed at my expense."

The amended petition was amended by plaintiff's filing a full statement of the account with defendant and alleging an indebtedness of $803.60 due under the original contract, and a balance of $40 under the amended contract.

Defendant's amended answer was by general denial, and for further defense she specifically plead that, under the original contract she was to pay for satisfactory performance of the contract in its entirety a supervision fee of 10 percent of the total cost; plaintiff's performance was so haphazard and inefficient that demand was made for him to cease work so that defendant could secure a competent contractor to complete the building; because of plaintiff's pleas that this would destroy his reputation as a contractor defendant agreed plaintiff might continue work upon the basis that defendant was to pay labor and materials up to December 12, 1952 and plaintiff would waive the 10 percent and complete the building for a fixed fee of $1,000; pursuant to the new agreement, and relying upon plaintiff's statements that the bonus fee was waived and required payment only of additional $1,000 defendant was induced to sign by reason of plaintiff's fraud and misrepre-

sentation. Further, under this agreement defendant had given plaintiff a check for $1,811.21, representing balance of total costs up to December 17, 1952, which check plaintiff received and cashed in settlement of indebtedness; that she had paid $960 of the amount due under amended contract, but had not approved the work on May 23, 1953 as alleged by plaintiff, and that same remained uncompleted. Defendant asked that plaintiff take nothing, except $40 tendered as full settlement of balance due under amended contract, and that the contract be reformed to conform to the parties' agreement waiving the fee for supervision and fixing plaintiff's total remuneration ($1,000) for completion of construction. The issues were formed by plaintiff's reply making general and specific denial of all matters set forth in the amended answer.

Plaintiff's evidence was that under written contract he agreed to build a house for defendant upon terms that she was to pay materials and labor costs, and upon completion plaintiff was to receive 10 percent of the total costs as a bonus or fee for supervision. Costs were to be paid by defendant at regular intervals upon the basis of statements furnished, but defendant generally was behind with payments. Early in December, 1952 defendant became dissatisfied with plaintiff's progress, and wanted to negotiate new arrangements whereby the house would be completed to a certain stage and defendant then could take over and finish certain items remaining to be done for an anticipated cost of $1,000. After some discussion defendant agreed to let plaintiff handle the remainder of the job at such figure. This agreement was embodied in the amended contract of December 17, 1952, but the original contract still was required to be paid off in full, as of the date of the amended contract, although there was no agreement regarding how defendant should pay the bonus. The statement for the week ending December 17th showed the entire cost and amount due. Defendant paid $1,811.21 under this statement, but this amount did not include the bonus. Upon completion of the original contract plaintiff

made no demand for the bonus. The work was completed in February, 1953 and the following June, during which period defendant had been paying on the $1,000 due under the amended contract, plaintiff asked her for the $40 balance and at the same time demanded payment of the bonus, or supervision fee. When demand was made defendant denied owing the amount claimed. No part of the $960 payments had been credited to the bonus fee. Plaintiff denied having had any agreement or understanding with defendant that he was waiving his 10 percent bonus and accepting the $1,000 as a fixed fee for completion of the job.

Defendant's evidence was that the original estimate for construction of the house was approximately $6,500 and the original contract was signed on that basis. Plaintiff's work continued over so long a period that she was unable financially to continue, and about the first week of December, 1952, defendant and her daughter called on plaintiff and told him to stop construction. Defendant advised plaintiff she could have the house completed by another party for $1,000. Plaintiff stated it could be done for much less, and because his reputation as a builder would be injured if forced to quit the job, he would complete the project for the same price ($1,000), provided defendant paid the plumbing bill. This item, amounting to $771, thereafter was paid by defendant. When defendant, accompanied by her daughter, discussed the matter with plaintiff she told him they both would have to stand a loss on the deal; at that time she offered to pay up the original contract to date and give defendant $1,000 as a flat fee for everything, including his supervision, and this arrangement was agreed upon and they shook hands on the deal. Subsequently plaintiff presented the accountant's itemized statement showing a balance due of $1,811.21. Defendant called at the accountant's office and paid this amount by check and at that time signed the amended contract. She testified that she read the contract, but signed it only in reliance upon plaintiff's agreement that his fee for supervision would come out of the $1,000, which

amount would be all she owed. She would not have signed the amended contract had she known plaintiff was claiming the additional 10 percent under the original contract, and it was not until the following September, when she had paid $960 of the amount agreed upon, that plaintiff made any demand for the additional 10 percent. The testimony of defendant's daughter was corroborative of defendant's evidence relative to discussions with plaintiff as to stopping construction, discussion and agreements leading up to defendant's signing the amended contract, and related matters.

After hearing the evidence the trial court found the issues generally in defendant's favor, gave plaintiff judgment for the $40 balance which defendant had tendered in settlement prior to trial, and for this reason taxed costs to plaintiff.

In seeking reversal of the judgment rendered plaintiff presents a generalized argument, to the effect that defendant's evidence failed to establish fraud and misrepresentation. Since the trial court's judgment was a general finding for defendant, and in view of the fact that both parties treat the matter in this light, we limit consideration to the single question.

Summarized, plaintiff's argument is that defendant relied solely upon fraud and misrepresentation in defense of the action; the fact she admitted having read the amended contract; coupled with failure of defendant's evidence to show fraud and misrepresentation clearly and satisfactorily, requires reversal of the judgment.

■ Two decisions are cited in support of this argument. The first, National Fire Ins. Co. of Hartford v. McCoy, 205 Okl. 511, 239 P.2d 428, involved reformation of an insurance contract. The decision therein simply adhered to the recognized, general rule that courts cannot permit contracts to be altered by parol evidence, except in cases of fraud or mutual mistake of fact. The case of Eason Oil Co. v. Whiteside, 175 Okl. 254, 52 P.2d 35, reflects an earlier pronouncement of this general rule. We note at this point that neither of these cases turned upon

the issue of fraud, although both decisions recognized the general rule that unambiguous written agreements are to be upheld except in instances of fraud, misrepresentation, or mutual mistake. The rule is stated in syllabus 2 of the McCoy case, supra, in the following language:

> "A contract in writing, if its terms are free from doubt or ambiguity, must be permitted to speak for itself, and cannot by the courts, at instance of one of the parties, be altered or contradicted by parol evidence, unless in case of fraud or mutual mistake of facts, and this principle is applicable to contracts of insurance."

■ We are of the opinion plaintiff's position is untenable. The language of the amended contract created a discrepancy as to the exact intention of the parties. The original contract provided for payment of the bonus fee to plaintiff within 30 days of the completion of the contract "in its entirety." It is not disputed that the original contract had not been performed and, for reasons mentioned above, the parties discussed complete stoppage of the work under the contract. Then, as a result of their discussion, the amended agreement (above quoted in part) was executed. In compliance with the requirements thereof defendant discharged the full amount shown to be due by the itemized account of defendant's accountant, under the first contract. This satisfied the requirement of the amended contract that: "The prior contract will be paid as prescribed therein to this date, December 17, 1952." Whatever rights and obligations of the parties were at that time they were to be determined upon the basis of the amended contract.

This contractual relationship gave rise to the controversy. The evidence relative to the reasons for renegotiation, the discussions leading up to the amended contract, and the testimony of the parties as to the understanding and intentions of each has been noted. Disposition of the case turns entirely upon whether the evidence is sufficiently clear, satisfactory and free from

doubt to support the trial court's judgment reforming the contract in accordance with defendant's claim.

Plaintiff denied any intention to relinquish his 10 percent bonus under the original contract. Defendant's evidence was that he recognized the circumstances, realized the probable result of not completing the contract, and asked for opportunity to continue the work upon the basis offered defendant by another party. The payment by defendant of the amount due under the original agreement, at the time of signing the amended contract, undoubtedly was a fact given serious consideration by the trial court. This evidence, together with testimony concerning the discussions which culminated in the amended contract, constituted satisfactory proof that the parties agreed to complete the project upon the terms defendant asserted, and that she would not have signed the new contract had she not been lead to believe the entire agreement was that she was to pay only the $1,000 mentioned therein. The apparent conflict in the evidence does not provide grounds for denying the remedy of reformation. This was a disputed question of fact to be determined as such. The evidence is sufficient where the ground for relief is established in a clear and convincing manner to the trial court's satisfaction. Gault v. Spears, 125 Okl. 126, 256 P. 515; Prudential Fire Ins. Co. v. Stanley, 191 Okl. 506, 131 P.2d 88.

Plaintiff points to the fact that defendant admitted having read the amended contract, an instrument apparently drawn by plaintiff's accountant, and insists that no claim of fraud may be made in such circumstances. Such fact alone cannot be considered as controlling in this instance. It is recognized that relief by way of reformation of a contract often is denied where complaining party is negligent in that, having the means of ascertaining the true state of facts, he fails to do so. However, the further rule often applied is that where one party is guilty of fraud equity may grant reformation notwithstanding the other party's negligence. See 45 Am.Jur., Reformation of Instruments, §§ 78–81. We have held, in cases where reformation was sought upon the grounds of mistake, that a reasonable person is entitled to deal in the belief the other party is honest, and may to some extent rely on the agreement. Oklahoma City Federal Savings & Loan Ass'n v. Clifton, 183 Okl. 74, 80 P.2d 283. And, whether negligence by the party seeking reformation will bar relief is determinable from the facts of each case. Crabb v. Chisum, 183 Okl. 138, 80 P.2d 653.

Although defendant read over the questioned contract, she stated that she "knew practically what was in it," but would not have signed the contract had she understood plaintiff was claiming she owed 10 percent under the original agreement. We are of the opinion the applicable rule is expressed in paragraph 3 of the syllabus in Gault v. Spears, supra, which states:

"The established rule is that, where a plaintiff seeks a reformation of a purported written instrument because of fraud of his adversary, the evidence must be clear, convincing, and satisfactory to authorize a reformation. And, where an appeal is prosecuted from a judgment reforming a written instrument, and the record presents evidence, clear, convincing, and satisfactory, that the purported written contract was not, in fact, the contract actually agreed upon, but was the result of fraud and overreaching of the other party, the judgment will not be disturbed on appeal because there is conflicting evidence."

Judgment affirmed.