### OCTOBER TERM, 1852.

Present—JOSEPH H. LUMPKIN, ⎫
　　　　 HIRAM WARNER, 　　 ⎬ Judges.
　　　　 EUGENIUS A. NISBET. ⎭

| 12 | 281 |
| 124 | 353 |

| 12 | 281 |
| 126 | 385 |

| 12 | 281 |
| 128 | 133 |

No. 50.—The Administrators of M. Ligon, plaintiffs in error, *vs.* Job Rogers, defendant.

[1.] Courts of Equity have jurisdiction to alter and reform written instruments, on the ground of mistake, on a proper case being made, but it is a jurisdiction which will always be cautiously exercised. The evidence to show a mistake in a written instrument, must be clear and strong, so as to establish the mistake, to the entire satisfaction of the Court.

[2.] Where a bill was filed to correct and reform a written agreement, signed by the parties, on the ground that a material portion thereof was omitted to have been inserted therein by mistake; and it appeared on the trial, that the complainant *knew* at the time the written agreement was executed, that the alleged omitted portion of the agreement was *not in it,* but relied on the promise of one of the party's attorneys to carry that part of the agreement into effect: *Held,* that it was not such a mistake in the written agreement, as a Court of Equity could correct, and specifically enforce it, when corrected.

[3.] Where a judgment was entered up against the executors of an estate, so as to bind them *personally,* and afterwards an order was taken to amend and correct that judgment, so as to make it a lien on the estate of the deceased testator: *Held,* that the judgment as amended, could not relate back to the date of the first judgment, so as to create an incumbrance on the property of the testator, which had been purchased from his executors, intermediate the date of the original judgment and the amended judgment,

VOL. XII 36

by a *bona fide* purchaser, for a valuable consideration, without notice: *Held also,* that a Court of Equity will not interfere to correct a mistake in a written agreement, and then enforce a specific execution of it against a *bona fide* purchaser of property, who had no knowledge of such mistake.

[4.] When a complainant in a bill in Equity charges fraud and collusion, in the purchase of property, between the vendors and vendee thereof, and makes them defendants and seeks discovery and relief against them; the answer of the vendor is evidence for the vendee, who is a co-defendant, as against the complainant, so far as the same is responsive to the allegations contained in the complainant's bill.

In Equity, from Floyd Superior Court.    Tried before Judge J. H. LUMPKIN.    August Term, 1852.

In 1838, Marshall Ligon brought his action against Job Rogers and Zachariah B. Hargroves, for the loss of a negro man, a team of horses, and a wagon, alleged to have been lost by the sinking of a ferry-boat, belonging to the defendants. Before trial in this suit, the plaintiff died, and Robert Atkinson, his administrator, became a party.    Hargroves also died, and James M. Spullock and Malinda Hargroves, his executors, were made parties in his stead.    In 1840, a judgment for the plaintiff was rendered, from which defendants appealed, and pending the appeal the following agreement was entered into between the parties:

" For the purpose of friendly adjusting and settling the above stated case, it is mutually agreed by the parties, that the appeal be dismissed in this case, and in consideration of the adjustment of this case, the plaintiffs agree to credit the judgment entered in this case with the sum of seven hundred and sixty dollars, so as to make the judgment stand for the sum of fifteen hundred dollars and the interest thereon only, and cost; all above that amount and its interest, being hereby relinquished; and it is further agreed, that this agreement be entered on the Minutes of the Court.    (Signed,)

D. R. MITCHELL, *Plff's. Atty.*
AKIN & WRIGHT, *Def'ts. Attys.*

In pursuance of this agreement the appeal was dismissed, and the judgment credited according to its terms. The judgment had been originally entered against Job Rogers " and James M. Spullock, executors, and Malinda Hargroves, executrix, of Zachariah B. Hargroves, deceased;" but in 1843, was amended by order of the Court, by adding, " to be levied on the lands and tenements, goods and chattels, which were of deceased, in the hands of said exucutors, to be administered upon."

Between the date of the judgment and this amendment, the executors of Hargroves, under the authority given by the will of their testator, had sold a large amount of land and negroes belonging to his estate, to William Solomons; and in 1844, Solomons obtained from the administrator of Ligon, a transfer of said judgment and *fi. fas.* and proceeded to levy the same on the property of Job Rogers.

Whereupon Rogers filed his bill, setting forth the foregoing facts, charging that the *fi. fa.* had really been paid off by Solomons, to save the property which he had purchased from the estate of Hargroves, and ought to have been returned satisfied ; and charging moreover, that a mistake existed in the written agreement above recited, between the parties to the original suit, in this, that it was a part of said agreement that the judgment should be paid by Hargroves, and that the plaintiff was not to proceed against Rogers, until he had levied on property of Hargroves, or which had been Hargroves', which Rogers might point out, and a trial had, if it should be claimed.

And the bill prayed that the agreement be reformed, and that Solomons be perpetually enjoined from enforcing the *fi. fa.* against him. To this bill the administrator of Ligon and the executors of Hargroves were made parties defendants with Solomons.

The answers of defendants denied that the *fi. fa.* had been paid off; denied the mistake in the agreement; and Solomons insisted that he had purchased the property of Hargroves, without knowledge of any lien of this judgment on said property, but insisted that no judgment against the estate of Hargroves existed at the time of said purchase.

On the trial of the cause, a great deal of testimony was introduced, and many points of law decided, such of which only as are necessary to elucidate the decision of the Supreme Court, will be recited.

It appeared from the testimony of Daniel R. Mitchell, that he was the attorney for Ligon in the original suit; that negotiations for settlement were carried on for a long time; that they finally agreed on the terms of settlement, which were the same contained in the written agreement, except that it was a part of the understanding that the *fi. fa.* was not to be levied on property of Rogers, until a levy had been made on property of Hargroves, or which had been Hargroves', such as Rogers might point out, and one trial was had if claimed. Witness stated that he wrote the agreement himself; that owing to the crowd and noise of the Court House, where he wrote it, he left out this part by mistake; that when he read over what he had written to the parties, Spullock and Rogers objected that this clause was not in it; that Atkinson objected to putting it in, but afterwards withdrew his objection. Witness then said, that as the agreement was written, it was not worth while to write it over, for that he, as attorney, would have the direction of the *fi. fa.* and would see that that part of the agreement was carried out; to which Rogers and the rest agreed, and the paper was signed as it stood; the parties being aware that the clause in question was not in it.

There was no conflicting testimony as to the agreement.

The defendant's counsel requested the Court to charge the Jury, among other things, that if Rogers knew, when the counsel for defendants in the original action signed the agreement, that the part of it which he says was left out by mistake, was not in it, then the contract of settlement cannot be altered or reformed by adding the terms so left out; for all that was said at the time the agreement was entered into or before, is in the written agreement: and also, that if Solomons was a *bona fide* purceaser of the property sought to be subjected to the execution, a Court of Equity will not lend its aid to Rogers to enforce judgment against the property, even if the Jury should

Administrators of Ligon *vs.* Rogers.

believe that Rogers sustained the relation of security to Hargroves.

Both which charges the Court refused to give.

The Court was further requested by defendant's counsel, to charge, that if Spullock's answer is evidence against Solomons, as to any matter or thing to which Solomons answers of his own knowledge, it would not have more effect than the testimony of a single witness, and a decree could not be rendered upon the answer alone against Solomons, unless Spullock's answer was supported by other evidence. In which the Court charged the Jury, that so far as Solomons was concerned, Spullock's answer was not evidence at all.

The Jury rendered a decree for the complainant; upon which the defendant, having first moved for a new trial, which was overruled, took exceptions to the rulings of the Court on the grounds taken.

McDonald, for plaintiffs in error.

W. H. Underwood, for defendant.

*By the Court.*—Warner, J. delivering the opinion.

The complainant filed his bill, to correct an alleged mistake in a written agreement, and also to enforce a specified execution of the agreement when corrected and reformed. That a Court of Equity has jurisdiction to correct mistakes in written contracts, has been solemnly adjudicated by this Court in the case now before us. It is a jurisdiction however, which will always be *cautiously* exercised. When the complainant asks the assistance of the Court, to correct an alleged mistake in a contract reduced to writing, by the insertion of any *additional* terms or stipulations, the foundation therefor should be clearly and distinctly stated in his bill; that is to say, the complainant should clearly and distinctly state, what was the *contract or agreement* between the parties, and what part or portion thereof, was omitted to be reduced to writing, so as to express the real

intention of the parties to the contract, when the same was finally concluded between them.

[2.] When this case was before us on demurrer, we held, that the complainant had made by his bill, a *prima facie* case, which would entitle him to relief. See *Rodgers vs. Atkinson*, 1 *Kelly*, 12. On the final trial of the cause, the counsel for the defendants requested the Court to instruct the Jury, "that if Rogers, the complainant, *knew*, when the counsel for the defendant in the original action, Aiken and Wright, signed the agreement, to wit: that part of it which he says was left out by mistake, *was not in it*, then the contract for settlement cannot be altered or reformed, by adding the terms so left out; which instructions the Court refused to give, whereupon the defendant excepted.

The principal witness for the complainant, Daniel R. Mitchell, Esq. states, that " he drew the insturment signed by himself as plaintiff's attorney, and Aiken and Wright, as defendant's attorneys. The instrument contains the terms of the agreement, with this exception; that Job Rogers was to have the right to point out property to be levied on, belonging to the estate of Hargroves, or such as was subject to the *fi. fa.* and one fair trial was to be had, to subject the property levied on, if it should be claimed, before the money was to be made out of Rogers. Witness wrote the instrument in the hurry of business, and omitted to put the above in it, through mistake. Witness thinks he signed the instrument, and when he read it over to Atkinson, Spullock and Rogers objected to the above provision not being in it, and Atkinson objected to its being put in it, on the ground that it might delay him too long in making the money. Witness advised Atkinson to withdraw the objection, stating to him, that the delay might not be longer than the prosecution of the appeal. Atkinson withdrew his objection, and did agree to the item in relation to first levying on Hargroves' property. Witness then stated *in the presence of Atkinson and Rogers, that as the instrument was written, it would not be worth while to write it over again, as he, witness, would have control of the execution, he would carry out that part of the agreement, to which both parties assented.* In the conversation on the subject, something was said about

Administrators of Ligon *vs.* Rogers.

William Solomons having property that was subject to the judgment; or in relation to levying on property which he had bought of the estate of Hargroves. Witness does not recollect by whom or what it was. Witness thinks he then gave the instrument which he had signed, either to Rogers or Spullock, to carry to their attorneys for signature. *When Rogers' attorneys signed the agreement, Rogers knew that the item in relation to the levying on the property of the estate of Hargroves, was not in it.*

This witness further states, that he proceeded in good faith to carry out the omitted item in the agreement with Rogers, and would have done it, if Atkinson had not sold the *fi. fa.* to Solomons, and thereby prevented him. The testimony of Warren Aiken, Esqr. who was examined as a witness in the cause, shews that Mitchell, the attorney for the plaintiff, after he had signed the agreement, handed it to Rogers, to carry to the attorneys of the defendants, for their signature thereto. He states that "when Job Rogers brought the written argeement, which is now sought to be reformed, to him to sign it as counsel for the defendants, witness read the agreement, and refused to sign it, because he had received no authority from Spullock, who alone had employed him in the case. Rogers then took the agreement and left witness, and returned the next day with the written agreement, and brought a written order from Spullock, instructing witness to sign the agreement, which he then did, with the name of Aiken and Wright, as attorneys for defendants. When Rogers first brought the written agreement to witness, it was then signed by Daniel R. Mitchell, as attorney for plaintiff." Now the allegations in the complainant's bill is, that so much of the agreement made between the parties, as relates to levying on the property of the estate of Hargroves, &c. was left out of the written instrument signed by the parties, by *mistake.* The charge of the Court to the Jury as requested, assumes the position, that if Rogers *knew* what was contained in the written agreement, *at the time it was executed by the parties*, then there was *no mistake* as to its terms and stipulations: but, on the contrary, contained just what the parties knew, and intended it should contain, *at the time of its execution by them.* The

general rule is, that the written instrument furnishes better evidence of the deliberate intention of the parties to it than any parol evidence can supply ; and the general rule must prevail, unless the complainant can bring his case within some one of the exceptions to that general rule, by shewing by clear and satisfactory evidence, that either by *accident, fraud, or mistake,* the written itstrument does not contain and express what the parties intended it should contain and express, *at the time of its execution.*

In *Shellburne vs. Inchinquin,* (1 *Brown's Ch.* 347,) Lord *Thurlow* said, the evidence must be *strong, irrefragible evidence.* By this, we understand that the evidence offered to establish *the mistake,* must not be equivocal, uncertain, contradictory, or doubtful, in its character. The evidence to shew a mistake in a written instrument, must be clear and strong, so as to establish the mistake to the entire satisfaction of the Court. *Gillespie vs. Moon,* 2 *Johns. Ch. Rep.* 585. The question is not as to what passed in conversation between the parties before the agreement was reduced to writing, but the question is, whether the instrument of writing signed by the parties, contains all that they intended should be embraced in it, *at the time of its execution.* Was any portion of the agreement between the parties left out or omitted by *mistake,* without their *knowledge or consent?* If Rogers *knew* what was the agreement between the parties, as he must be presumed to have done, and also *knew* at the time the agreement was executed, that the portion thereof relating to the levying the execution on Hargroves' property, was not in it, how can it be said that he was *mistaken* as to what the written agreement contained? the more especially, as he had the written instrument in his possession, and carried it from Mitchell to Aiken for his signature, then to Spullock, and back again to Aiken. If the alleged omitted portion of the agreement was left out of the written itstrument, at the time of its execution, with the *knowledge and consent* of Rogers, he relying on Mitchell to execute the agreement, instead of having it incorporated in the written instrument, then, there is no *mistake in the execution of the instrument,* and a Court of Equity will not reform it ;

for the simple reason, that the written instrument is just what the complainant *knew* and intended it should be, *at the time of its execution.*

That Rogers relied on Mitchell to have the property of Hargroves levied on, and therefore did not insist upon having that portion of the agreement incorporated in the written instrument, is quite probable ; and that the purchase and control of the execution by Solomons, was an event which was not contemplated by him at that time, is also quite probable ; but it is all the result of *his own* act, for Mitchell says, " that he stated in the presence of Atkinson and Rogers, that as the instrument was written, it would not be worth while to write it over again, as he, witness, would have the control of the execution, he would carry out that part of the agreement, to which *both parties assented.*"    The sum and substance of the whole matter is, that Rogers *consented* that that portion of the agreement, relating to the levying the execution on Hargroves' property might be left out of the written instrument, and that he would rely on Mitchell to carry out that portion of the agreement, but has been disappointed and defeated in his calculations and expectations, by the purchase and control of the execution by Solomons, an event which neither himself nor Mr. Mitchell probably contemplated at that time. Courts of Equity may compel parties to execute their agreements, but have no power to *make agreements* for them.    *Hunt vs. Rousmarner's Administrator,* 1 *Peters' Rep.* 1.

[3.] The instructions asked of the Court to the Jury, by the defendant's counsel, ought, in our judgment, to have been given, in view of the evidence relating to this branch of the case. The defendant, Solomons, insists, in his answer, that he is a *bona fide* purchaser of the property, for a valuable consideration, which is now sought to be subjected to the execution against Rogers and the executors of Hargroves, and explicitly denies that he had any knowledge of the agreement, as alleged by complainant, at the time of his purchase thereof ; and also denies that there was any judgment against the legal representatives of Hargroves, which created a lien upon the property in question, at the time of his purchase, and denies all knowledge

of any such judgment; and alleges the same was not in existence at the time he purchased the property.

It appears from the record, that in October, 1840, a judgment was entered up against Job Rogers, Malinda Hargroves, executrix, and James Spullock, executor of Zachariah Hargroves, deceased, for $2260.00, in favor of the administrators of Ligon. By the subsequent agreement of the parties, the amount of this judgment was reduced to the sum of $1500.00. Execution issued on this judgment, which was held by the Superior Court to be illegal, on the ground that the judgment had not been entered up, so as to bind the goods and chattels of Hargroves, the testator. At October Term, 1843, of Floyd Superior Court, an order was taken to correct the judgment, reciting that the former judgment was *erroneously* entered up, in this, " that it does not recite that the amount of the judgment shall be levied on the lands and tenements, goods and chattels, which were of deceased, in the hands of said executors to be administered." The original judgment was then ordered to be amended, and the *fi. fa.* to issue, in conformity to the amended judgment.

Between the time of the entering the original judgment, in October, 1840, and the correction of the judgment, in October, 1843, the defendant, Solomons, became the purchaser of the property. In relation to this branch of the case, the Court was requested by the counsel for the defendant, to charge the Jury, " that if Solomons was a *bona fide* purchaser of the property sought to be subjected to the execution, a Court of Equity will not lend its aid to Rogers, to enforce the judgment against the property, even if the Jury should believe that Rogers sustained the relation of security to Hargroves," which charge the Court refused to give, but charged the Jury, " that if there was a subsisting judgment against the executors of Hargrove and Rogers, and Solomons had notice of the judgment, then the contract might be enforced, and that Solomons took the *fi. fa.* subject to all the equities between the original parties, whether he had actual notice or not;" to which charge, and refusal to charge, the counsel for defendant excepted.

There is no doubt that Solomons, as the assignee of the exe-

Administrators of Ligon *vs.* Rogers.

cution, took it subject to any defence which might have been set up against the original plaintiffs, with or without notice, as was ruled in *Colquitt vs. Bowen*, 2 *Kelly*, 155. But that is not the question made by this record. The question made here is, whether the alleged agreement shall be reformed, and when reformed, specifically enforced against the property purchased by Solomons *intermediate* the entering up the first judgment in 1840, which was held not to create a lien on the property of Hargroves, and the alteration and correction of that judgment in 1843, so as to make it operate as such a lien, and bind the property of the estate of Hargroves. If the record be true, there was no judgment in existence which created a lien on the property of Hargroves, at the time the defendant, Solomons, purchased it from his executors, under the power of sale given in his will. But it is said, when the judgment was amended and corrected in 1843, such amendment and correction has relation back to the date of the original judgment, in 1840. However that might be, as between the original parties to the judgment, the intervening rights of a *bona fide* purchaser, without notice, cannot be affected by it. The defendant insists, that he is a *bona fide* purchaser of the property of Hargroves, without any knowledge of such a judgment as is now attempted to be enforced against it. The doctrine of *relation* is for the protection of right and justice, and is never allowed, to the injury of innocent third persons. *Butler and Baker's case*, 3 *Coke*, 35. *Frost vs. Beekman*, 1 *John. Ch. R.* 297. It is a general principle of law, says Chancellor *Kent*, that in all cases where it becomes necessary for the purposes of *justice*, that the true time when any legal proceeding took place should be ascertained, *the fiction of law* introduced for the sake of justice, is not to prevail against *the fact.* 4 *Kent's Com.* 454. To allow the amended judgment of 1843 to relate back to 1840, so as to create an *incumbrance* on the property purchased by the defendant, from that time, when no such incumbrance in fact existed at the time of his purchase, would be a species of injustice, which would naturally shock the conscience of every enlightened judicial tribunal. Besides, it is a general rule, that a Court of Equity will not

interfere to grant relief against a *bona fide* purchaser for a valuable consideration, without notice, on the ground of *accident*. 1 *Story's Eq.* §108. Nor on the ground of *mistake of law*. *Ibid*, §139. Nor in cases of *mistake in written instruments ;* for in such cases the *bona fide* purchaser has at least an equal equity to the protection of the Court. *Ibid*, §165.

In our judgment, the Court below erred, in refusing to give to the Jury the charge as requested, on this branch of the case. *Boone vs. Chiles*, 10 *Peters' R.* 210. *Frost vs. Beekman*, 1 *John. Ch. Rep.* 300.

[4.] Another ground of error assigned in the record is, that the Court charged the Jury, "that so far as Solomons was concerned, Spullock's answer was not evidence at all."

The defendant, Solomons, purchased the property in controversy, from Spullock and Malinda Hargroves, the executor and executrix of Zachariah Hargroves, deceased. The complainant alleges that there was a *fraudulent* combination between Solomons and the executors, in the purchase and sale of this property, and that the same was not a fair and *bona fide* purchase thereof, on the part of Solomons, and calls upon the defendants to answer that allegation. The question here is, not whether the answer of one co-defendant is evidence *against* another co-defendant; but the question is, whether the answer of one co-defendant is evidence *for* another co-defendant, *against the complainant*, when the same is *responsive* to the allegations made by the complainant in his bill. In our judgment, the answer of Spullock was evidence for Solomons, his co-defendant, against the complainant, so far as the same was *responsive to the allegations made in the bill*, by the complainant. The complainant calls upon the defendants for a discovery in relation to a transaction which he alleges was a *fraud* upon his rights ; to the extent of his charges and allegations against them, they are his own witnesses, and when they have answered, he cannot be permitted to say that their respective answers are not evidence, because the same are unfavorable to him. This question was considered and decided in *Field et al. vs. Holland et al.* 6 *Cranch Rep.* 8; and in *Mills vs. Gore*, 20 *Pickering's Rep.* 28.

On the argument, there were many other incidental points raised and discussed by the counsel for the plaintiffs in error, but the view which we have taken of the main points in the case, renders it unnecessary for us to express any opinion in regard to them.

Let the judgment of the Court below be reversed.