### TOWN OF BRAMAN v. BROWN et al.

No. 22475.   June 18, 1935.

Sargent & Ross, for plaintiff in error.

J. E. Curran and Ray W. Cox, for defendants in error.

RILEY, J. This action was for reformation of a quitclaim deed and for damages occasioned by reason of the manner of construction of a sewer line installed by the town of Braman on the land described in the deed. The plaintiff below prevailed and recovered a judgment of $4,000 from the town.

At the threshhold of consideration we are met with a motion to dismiss the appeal because the motion for new trial was not filed within term time. Judgment below was rendered Saturday, November 29, 1930. The application for new trial was filed Monday, December 1, 1930. Under the provisions of section 3832, O. S. 1931, a term of district court begins in Kay county on the first Monday in December each year. Under the provisions of section 400, O. S. 1931: "The application for a new trial must be made at the term the verdict, report or decision is rendered, and * * * shall be within three days after the verdict or decision was rendered unless unavoidably prevented."

On December 19, 1930, T. G. Sargent, an attorney for the town of Braman, filed an affidavit wherein it is alleged that the defendant town was unavoidably prevented from filing motion for new trial within the term at which the judgment was rendered. This instrument details that from the hour of judgment, to wit, 4:30 p. m., he had but 30 minutes, an insufficient time, in which to prepare and file his application prior to the closing hour of the court clerk's office; that the application was filed, as heretofore indicated, on the following Monday morning.

Evidence was introduced to support the allegations of the affidavit. The court on December 27, 1930, overruled the motion for new trial, having considered the same on the merits, and, therefore, having found by implication and construction that the movant was "unavoidably prevented" from filing the application as first intended by the statute.

Under the decision in the case of Gardner v. Blanton, 80 Okla. 143, 194 P. 1084, the phrase "unless unavoidably prevented" applies both to the number of days in which, and the term of court at which the filing should occur. Likewise it is authority for the rule that the failure to perform, as by the statute first intended, may be excused on the ground of "unavoidable casualty."

The failure to file motion for new trial is not inexcusable. Schaelher v. Hibbard, 64 Kan. 601, 48 P. 61.

In event a motion for new trial is not filed as by the statute first intended, and in event there is no affirmative showing of being unavoidably prevented from so doing, the trial court should strike the application. Where the jurisdiction of the trial court is exercised in consideration of the application on the merits, by an examination of the judgment for errors, as in the case at bar, every presumption is indulged in favor of the legality of the judicial power exercised.

This case presents almost the same situation as that in Riely v. Robertson, 29 Okla. 181, 115 P. 877. There the motion was filed within three days after judgment, but not within term time; the adverse party moved to strike, evidence as to the movant being "unavoidably prevented" was adduced, the court elected to consider the application on the merits. Therein the appellate court held the action of the trial court was equivalent to a finding of movant being unavoidably prevented from filing the application as by the statute first intended. Gaffney v. Stanard et al.; 31 Okla. 541, 122 P. 510; Aetna Bldg. & Loan Ass'n v. Smith, 73 Okla. 83, 175 P. 833; Cornish v. Sanders, 132 Okla. 296, 270 P. 563; City of Maud v. Tulsa Rig & Reel Mfg. Co., 155 Okla. 181, 25 P. (2d) 793.

The motion to dismiss is denied.

Error is predicated upon the action of the trial court in overruling defendant's motion to quash service of summons.

Braman is organized under the laws of Oklahoma relating to towns. Its chief officers consist of trustees and a president Section 4760, C. O. S. 1921 (sec. 6630, O. S. 1931):

"The president and trustees of such

town and their successors in office shall constitute a body politic and corporate * * * and shall be capable in law to prosecute and defend suits to which they are a party."

Section 243, C. O. S. 1921 (section 176, O. S. 1931), provides:

"A summons against a corporation may be served upon the president, mayor, chairman of the board of directors, or trustees, or other chief officer, or upon an agent duly appointed to receive service of process, or if its chief officer is not found in the county, upon its cashier, treasurer, secretary, clerk or managing agent; or if none of the aforesaid officers can be found, by a copy left at the office or usual place of business of such corporation, with the person having charge thereof."

The first summons was served on "Sam Orr, Mayor," but the return did not recite that he was mayor of the town of Braman.

Thereafter an alias summons was served on "D. G. Fisher, City Clerk," but the signature of the sheriff was omitted from the return. An amendment to the return was made showing service on the town of Braman by personal service on "D. G. Fisher, City Clerk * * * he being the City Clerk of the defendant corporation, in Kay county, Oklahoma, no person being by said defendant corporation designated in said county upon whom summons can be served, and the president, chairman of the board of directors or trustees, or other chief officer, cashier, treasurer, secretary or managing agent of said defendant corporation not being found in said county. Joe H. Cooper, Sheriff, by J. W. Padgett, Deputy." Two amendments to the amended return followed so as to designate D. G. Fisher "Town Clerk." The last return (p. 16, C.-M.), made after judgment, is in substantial compliance with the statute section 318, C. O. S. 1921 (sec. 251, O. S. 1931), and is sufficient. City of Enid v. Rector, 97 Okla. 280, 223 P. 846; First Nat. Bank of Mill Creek v. Ellis, 27 Okla. 699, 114 P. 620; Ozark Marble Co. v. Still, 24 Okla. 559, 103 P. 586.

Plaintiffs below owned a farm adjoining the town of Braman in Kay county. In December, 1926, after some negotiations by the trustees of the town, plaintiffs, for a consideration of $800, issued and delivered to the town a quitclaim deed to a plot of ground located near the center of plaintiffs' farm. The town acquired the land for the location of a septic tank and right of way for a sewer line running to the tank. Installation was made in the year 1927, a part of the line was buried, part of it was level with the ground, and a part of it was above ground. Plaintiffs contended, and established to the satisfaction of the court below, that an agreement in December, 1926, was reached between the trustees and themselves at the time the grant was made that the sewer line would be placed below plow depth, but that by mutual mistake or fraud the agreement was not incorporated in the written instrument of that date; that the town failed to abide the agreement, resulting in damage in the sum of $4,000 to plaintiffs on account of inconvenience in cultivating crops on their remaining land and detrimental effect in the natural drainage of their soil.

After a careful examination of the record on appeal we are convinced that there is no ground proven that justified the trial court's order of reformation of the deed.

It was pleaded that plaintiffs verbally agreed to sell one acre of ground (described) upon which the town desired to place a sewage disposal plant, and to grant to the town a right of way across said quarter section of land for the location of a sewer line, "with the distinct understanding that said sewer was to be buried below plow depth"; that the town desired a conveyance for said purposes; that the council of the town fraudulently represented to plaintiffs that said sewer line would be laid below plow depth; that plaintiffs relied upon said representations and believed them to be true, but that they were false as set forth (i. e., the sewer line was not laid below plow depth); that plaintiffs were deceived by said fraudulent representations and executed a conveyance "as herein set forth," relying solely upon the representations of said council. That by fraudulent acts of "said trustees" or by mutual mistake, that portion of said conveyance which referred to the using of said right of way for sewer purposes, and to the burying of said sewer below plow depth, was omitted from said conveyance."

Reformation of the quitclaim deed was sought as a condition precedent to recovery for damages for violation of the contract sought to be set up as a restrictive covenant in the deed.

Assuming that an agreement existed between the parties, that the sewer line would be placed below plow depth (and we doubt that the weight of evidence supports this assumption—the plaintiff Brown, his wife and daughter, testified in the affirmative, whereas Mr. E. D. Miller, spokesman and "Chairman of the Board" representing the

town, and Fred W. Backer, a member of the board of trustees, dispute any representation to plaintiffs that the sewer line was to be placed as plaintiffs contend, but to the contrary testified that at the time of the negotiations the plaintiffs were shown prepared blue prints of the proposed sewer line and told and shown that a part of the line would be exposed. The testimony of trustee A. D. Garrison to some extent corroborated that of his associates), yet it is not established by any evidence that it was the intention of either party to incorporate such an agreement in the deed as a restriction or covenant. Mr. Brown testified (p. 62) : "Well, they agreed to put it below plow depth, and I asked him for a contract, and Mr. Miller raised up in his chair and says, "There is no use for a contract, it will go below plow depth'; and then we went to Mr. Bueger's office and made the deed."

The lawyer who prepared the quitclaim deed testified, and it was not disputed, that he advised plaintiffs that the town could fence the land granted if it so desired. (The plaintiffs seek in their brief to restrict this advice and testimony to the acre of land where the sewer plant was to be located, but the record does not so confine the meaning.) The deed was read to plaintiffs and acknowledged by them, and they well understood, or should have understood, that no agreement or restriction relative to the placing of the sewer line below plow depth was contained in the instrument. Without doubt, if such an agreement existed, plaintiffs were content to permit the same to rest in parol, and to rely upon the oral promise of the town officials not to violate it.

This deed is not sought to be reformed on the ground of ambiguity, nor is it sought to be revoked for fraud or concealment as an inducement leading to its execution. There was no fraud or mistake established as concerns the execution of the instrument, and within the scope of the pleadings.

The rule applicable is stated in 53 C. J. 927, sec. 39, as follows:

"When there is no fraud or mistake in the preparation of an instrument, and it appears that the party signing understood its language and purport, it cannot be reformed on the faith of a contemporaneous oral promise which was not kept."

An instrument cannot be reformed on account of a mistake of judgment, in that one party relied upon the contemporary parol

agreement of the other, instead of insisting upon its being reduced to writing, and incorporated in the instrument sought to be reformed. Herein, the plaintiffs knew that the words now sought to be inserted were omitted from the quitclaim deed; in fact, viewing plaintiff Brown's testimony in the most favorable light, it was never intended by him to insert such words in the deed, but to provide a written contract to so record the agreement of the parties, but plaintiff consented to forego the written contract. Thus to rest in parol the simultaneous agreement.

There was no established basis for reformation. Brosnihan v. Brosnihan (Wis.) 193 N. W. 74; 3 Pomeroy, Eq. Jurisprudence, section 1376.

The Supreme Court of Georgia held in the case of The Administrators of M. Ligon v. Rogers, 12 Ga. 281:

"Where a bill was filed to correct and reform a written agreement signed by the parties, on the ground that a material portion thereof was omitted to have been inserted therein by mistake; and it appeared on the trial that the complainant knew at the time the written agreement was executed, that the alleged omitted portion of the agreement was not in it, but relied on the promise of one of the party's attorney to carry that part of the agreement into effect, held, that it was not such a mistake in the written agreement as a court of equity could correct, and specifically enforce it, when corrected."

In Florsheim et al. v. Reinberger, 179 N. W. 793, the Supreme Court of Wisconsin, held, under a familiar and related statute, that:

"* * * A restriction on the use of the lands conveyed must be in writing, and a deed cannot be reformed to include such restriction, which it was agreed was not to be inserted in the deed."

And it there appeared, as in the case at bar, that "there was no understanding * * * that any restrictive covenant was to be inserted in the deed."

In a similar Texas case, May v. Cearley et al., 138 S. W. 165, the court reached the same conclusion, where the only writing involved and brought to the attention of the court was the deed from the Cearleys to May, sought to be reformed.

The Kentucky court denied reformation in Pickrell & Craig Co. v. Castleman Blakemore Co., 191 S. W. 680, where the "omission was recognized, discussed and consented

to," saying, "so there was no mistake of fact involved."

See, also, Kepner v. John M. C. Marble Co. (Cal.) 148 P. 231, and Olmstead v. Michael, 1 L. R. A. 840, 36 Fed. 455, affirmed 157 U. S. 200, 39 L. Ed. 671, 15 Sup. Ct. Rep. 580.

While the finding of the trial court is that by mutual mistake or fraud the agreement was not incorporated in the written instrument sought to be reformed, the fact is, no intention is disclosed by the record that plaintiff expected to incorporate the restrictive covenant in the deed, and for that reason and to that extent the finding of the trial court is not supported by any evidence.

The judgment is reversed, with directions to dismiss the petition.

McNEILL, C. J., OSBORN, V. C. J., and BAYLESS, BUSBY, WELCH, PHELPS, CORN, and GIBSON, JJ., concur.