HARRELL et al. v. NASH et al.

No. 30249. Nov. 10, 1942.

Rehearing Denied Jan. 19, 1943.

Application for Leave to File Second Petition for Rehearing Denied Feb. 16, 1943.

*133 P. 2d 748.*

Ames, Monnet, Hayes & Brown, of Oklahoma City, for plaintiffs in error.

Twyford & Smith, of Oklahoma City, for defendants in error.

HURST, J. G. R. Nash and others, heirs of Joseph Nash, deceased, sued for the reformation of a contract made between them and defendants, F. O. Harrell and Smiley Harrell, and a mineral deed made by the Harrells to them. The trial court reformed the contract and deed in accordance with the prayer of the petition, and defendants appeal.

The material facts are these: On October 8, 1909, Anna B. Johnson, the then owner, conveyed to the public and Oklahoma City & Suburban Ry. Company a strip of land off the east side of a five-acre tract of land in Oklahoma City. Part of the strip was for railroad right of way, and the remainder was to the public for street, parking and sidewalks. Thereafter she conveyed the entire tract to Joseph Nash. On September 25, 1911, Joseph Nash and wife mortgaged the tract to Lee Harned. Immediately following the description in the mortgage the following language appears: "containing five acres, more or less, streets and alleys being reserved to the grantor." This mortgage was foreclosed and the property sold at sheriff's sale, and the title of the purchaser at such sale, by mesne conveyances, vested in the Harrells, who platted the land as Harrell's Addition to Oklahoma City. The addition was divided into two blocks. In December, 1935, the Harrells leased the land for oil and gas to Phillips Petroleum Company, making two leases, each lease covering

one block, and calling for a royalty of one-fourth the oil and gas. These leases were recorded January 9, 1936. At the time the leases were recorded, the land, which lay just north of 23rd street, was not zoned for drilling. Each block of the addition was communitized with other property leased by Phillips Petroleum Company.

In February, 1936, F. O. Harrell and his attorney made a trip to Texas, where all but two of the heirs of Joseph Nash lived, and procured a quitclaim deed from the Texas heirs, paying $5 to each heir. The other two heirs, G. R. Nash, who lived in California, and G. B. Nash, who lived in Oregon, refused to execute deeds which were mailed to them by Harrell's attorney. Subsequently one of the Texas heirs, Mrs. Minnie Cruz, consulted an attorney in Oklahoma City, who advised her that the strip was still the property of the Nash heirs if she could prove that the quitclaim deeds were obtained by misrepresentation. She asserted that they were, and said attorney prepared to bring an action for the Nash heirs to recover the strip. Negotiations looking to a settlement of the claims of the Nash heirs resulted in the execution of the contract and deed sought to be reformed in this action.

The contract was executed April 16, 1936, by Mrs. Cruz, as attorney in fact for the Texas heirs, and G. R. Nash for himself and G. B. Nash. It recited the controversy over the title; that in settlement of the controversy the quitclaim deed made by the Texas heirs was ratified and confirmed, and that quitclaim deeds were also to be made to the Harrells by G. R. Nash and G. B. Nash. It further provided that the Harrells would attempt to vacate the street, which was a part of the strip claimed by the Nash heirs, and if successful would include it in the drilling blocks in which the two blocks of Harrell's Addition were communitized, and that the Harrells would transfer to the Nash heirs a 1/16 interest in all the minerals produced from the strip. The heirs were to receive no part of the bonus or rentals,

and were not to join in the leases. It was further provided that the strip would be communitized with other drilling areas, and that the interest of the Nash heirs would be the equivalent of one-half of the usual 1/8 royalty accruing to the owner of the strip, and that in consideration of the transfer of such interest and the sum of $675 paid by the Harrells, the Nash heirs relinquished all other claims to or interest in the strip. The contract did not recite that the land had been leased to Phillips Petroleum Company for a royalty of one-fourth of the oil and gas produced therefrom.

The contract was executed by the Nash heirs in the office of the attorney for the Harrells, and turned over to the attorney for the Nash heirs. Either that evening or the following evening it was taken to the Harrell home by G. R. Nash and the attorney for the heirs, where it was executed by the Harrells. Thereafter the quitclaim deeds by G. R. Nash and G. B. Nash were made and delivered, and the street was vacated in a proceeding brought by the attorney for the Harrells. On May 21, 1936, after the vacating of the street, the Harrells executed and delivered to the attorney for the heirs a mineral deed conveying to the heirs a 1/16 royalty interest in the oil and gas produced from the strip. This deed recited that Phillips Petroleum Company held an oil and gas lease on the property, but did not state the amount of royalty reserved in the lease. At the time the deed was delivered the cash consideration of $675 was paid.

The Nash heirs claim that they first learned that the Phillips Petroleum Company leases provided for a royalty of one-fourth of the oil and gas, in March, 1937. On June 15, 1937, they commenced this action alleging that the agreement with the Harrells was that they were to receive one-half of the royalty from the strip, and that the Harrells and their attorney falsely represented to them and to their attorney that the leases provided for a one-

eighth royalty, and that they relied upon such false representation, and were deceived thereby.

The Harrells by answer and cross-petition denied that the agreement was for one-half the royalty, and alleged that they made no representation that the Phillips Petroleum Company leases provided for a one-eighth royalty; that by the exercise of reasonable diligence, the heirs could have ascertained what royalty was provided in the leases, and that their failure to do so was due to their carelessness and neglect; that the heirs had no title to the strip, and that therefore there was no consideration received by the Harrells for the mineral deed, and prayed that it be canceled.

The contentions made by the Harrells on appeal, while argued under numerous heads, may be reduced to three, (1) that the Nash heirs had no title to or interest in the strip, and that therefore they were not entitled to reformation of the contract and deed, but that the trial court should have canceled both for failure of consideration, (2) that the heirs were guilty of gross and culpable negligence, which barred the right of reformation, and (3) that the evidence was not sufficiently clear and convincing to establish the right of the heirs to reformation.

1. The Harrells contend (a) that the deed from Anna B. Johnson to the public conveyed a fee-simple title to the part of the strip conveyed for street purposes, (b) that the reservation in the Joseph Nash mortgage, if Joseph Nash had any title to the street, did not reserve the fee to him, (c) that the reservation of the street by Joseph Nash was personal to him, and did not survive to his heirs, and (d) that upon the street being vacated the title reverted to the adjoining owner. Numerous authorities are cited in support of each of these contentions. They then urge that the heirs gave no consideration for the contract and mineral deed, but merely agreed to forego the assertion of a valueless right, and to abandon a claim which was without merit and legally unenforceable, and that, therefore, there was in fact no consideration moving from them to the Harrells for the contract and deed, and the court should have denied reformation and should have canceled the contract and mineral deed. In support of this argument they cite 15 O. S. 1941 § 106, Bradstreet v. Crosbie, 123 Okla. 269, 253 P. 63, Hulen v. Truitt, 188 Okla. 296, 108 P. 2d 170, and cases from other jurisdictions. The Nash heirs rely upon the qualification of the above rule stated in Fenner v. Sparks, 170 Okla. 556, 39 P. 2d 27, that if the claim be honestly asserted, the surrender thereof is a good consideration for a settlement and compromise thereof, although it may subsequently develop that the claim was unfounded. They rely also upon Jarecki Mfg. Co. v. Cimmaron River Oil & Gas Co., 69 Okla. 104, 170 P. 252, Roxana Petroleum Co. v. Goldrick, 113 Okla. 298, 242 P. 228, and Guaranty Life Ins. Co. v. Nelson, 187 Okla. 56, 101 P. 2d 627, which hold that the consideration for the compromise and settlement of a disputed claim is sufficient where the claim is made in good faith, and that the merits of the claim may not be inquired into or considered in an effort to avoid or defeat the settlement agreement. This is the general rule. 12 C. J. 324; 15 C. J. S. 730; 5 R. C. L. 881; 11 Am. Jur. 251.

The trial court was justified in finding from the record that the Nash heirs in good faith believed and claimed that they were the owners of the strip, and that this belief was shared by their attorney, who advised them to that effect, and was preparing to file an action for them when the compromise was effected. The attorney testified that he had considerable difficulty in persuading them to accept a compromise which gave them less than the whole strip. That the Harrells also believed that the claim was probably well founded is apparent. The trip made by their attorney to various points in south Texas to obtain deeds from the heirs, and his readiness to compromise when he ascertained

they were preparing to bring an action, strongly indicate that the Harrells did not consider the claim unfounded, or without substantial merit. The authorities cited by the Harrells are not applicable. The case falls within the rule announced in Jarecki Mfg. Co. v. Cimmaron River Oil & Gas Co., supra, and we will not now inquire into or pass upon the merits of the claim of the Nash heirs to the strip of land. We hold that the relinquishment thereof was a sufficient consideration for the compromise agreement and the mineral deed.

2. The contention that the Nash heirs were guilty of culpable or gross negligence is based upon the fact that neither they nor their attorney examined the leases, which were of record, or inquired of Phillips Petroleum Company, which had offices in Oklahoma City, to ascertain the amount of royalty reserved in the leases, and that having signed the contract and accepted the deed, with the provision therein that they were to receive only 1/16 of the oil and gas, they are bound thereby. The Harrells rely upon Colonial Jewelry Co. v. Bridges, 43 Okla. 813, 144 P. 577, Cherokee Oil & Gas Co. v. Lucky Leaf Oil & Gas Co., 116 Okla. 121, 242 P. 214, Allen v. Bates, 135 Okla. 265, 274 P. 1079, and other cases holding that a party, in full possession of his faculties, and able to read, who in reliance upon the representation that a writing embodies the terms of an agreement which it is drawn to express, signs the instrument, without reading it, or assuming himself that it does express the true agreement, may not thereafter reform or disaffirm it without showing that he is free from negligence. They also cite Town of Bramen v. Brown, 172 Okla. 8, 48 P. 2d 293, which holds that one who signs a written contract fully understanding its purport and language, and knowing that it does not set out the agreement, cannot have it reformed because of a contemporaneous oral agreement which is not performed. Numerous cases from other jurisdictions to the same effect are also cited.

The peculiar facts in the present case, as shown by the evidence on behalf of the Nash heirs, which was accepted as true by the trial court, distinguish it from the cases cited by the Harrells. G. R. Nash, Mrs. Cruz, and the attorney for the heirs all testified that the attorney for the Harrells prepared the contract, and that when they read it, their attorney immediately objected that it did not express the understanding had, which was that the Nash heirs were to receive one-half the royalty; that the attorney for the Harrells objected to redrafting it; that he stated positively that the leases carried a 1/8 royalty, and that the contract as drawn amounted to the same thing as if it called for one-half the royalty; that the two heirs and the attorney then retired to another room and discussed the contract privately, and the attorney advised them that he did not feel that the attorney for the Harrells would make a misstatement about the matter, and they decided to accept the contract rather than have it redrafted. If the leases carried a one-eighth royalty the statement that the one-sixteenth equaled one-half of the royalty was correct. The negligence of which the heirs and their attorney were guilty, therefore, would be their neglect to verify the fact that the royalty provided in the leases was one-eighth. It is a matter of common knowledge that one-eighth of the oil and gas is the usual royalty reserved in oil and gas mining leases in Oklahoma, and there is nothing in the record to show that the heirs or their attorney had any reason to believe that the leases in question provided for a greater royalty. Evidently Mrs. Cruz and G. R. Nash had confidence in their attorney, although they distrusted the attorney for the Harrells. Their attorney did not share that distrust, but apparently had full confidence in the attorney for the Harrells, and accepted his statement as correct, and pursued the matter no farther. The testimony of the Nash heirs and their attorney was denied by the attorney for the Harrells, but was evidently believed by the trial court.

This court is committed to the rule that one who makes a false statement of a material fact, of which he has personal knowledge, may not defeat recovery by the party to whom such representation is made, and who relies on it to his injury, by the plea that other sources of information were available to the injured party, from which the truth could have been ascertained. Gannon, Goulding & Thies v. Hausaman, 42 Okla. 41, 140 P. 407, 52 L. R. A. (N. S.) 519; Thompson v. Nickle, 105 Okla. 181, 229 P. 202; Thompson v. Davis, 124 Okla. 79, 254 P. 501; Werline v. Aldred, 57 Okla. 391, 157 P. 305. See, also, Pomeroy's Equity Juris. (4th Ed.) § 895; 23 Am. Jur. at page 963. We think this rule applies in the instant case, and that the Harrells may not impute negligence because the Nash heirs and their attorney relied upon and accepted as true the statement made by the attorney, who was the agent of the Harrells.

The Harrells assert that the rule has no application to the Nash heirs, for the reason that they claimed the property and will be presumed to know the condition of the title. They cite in support of this contention Seeger v. Odell (Cal. App.) 108 P. 2d 33. We do not consider that case applicable. In the instant case the heirs knew that the lease had been executed by the Harrells, who were also claiming ownership of the strip. The heirs were not necessarily bound to know the exact terms and conditions of the leases made by the Harrells.

It is also contended that the heirs made an investigation of the title, and therefore should have known of the provisions of the leases. But the evidence shows that such investigation was made to ascertain whether the heirs were the owners of the fee title to the strip, and that the abstract of title examined for this purpose did not contain the oil and gas leases. It appears that all the information the heirs received as to the oil and gas leases was derived from the attorney representing the Harrells, and that they relied upon the statements made by him, and the assuranec of their counsel that such attorney would not mislead them.

3. The last contention made by the Harrells is that the evidence is not so clear and convincing as to entitle the Nash heirs to reformation. They call attention to the rule, established by this court in many prior decisions, that evidence to justify the reformation of a contract must be clear, unequivocal, and convincing and must establish the facts to a moral certainty. Douglas v. Douglas, 176 Okla. 378, 56 P. 2d 362; Critchlow v. Bacon, 142 Okla. 168, 285 P. 968; Davis v. Keeche Oil & Gas Co., 89 Okla. 226, 214 P. 711.

In the instant case the evidence is conflicting. The testimony of Mrs. Cruz, G. R. Nash, and their attorney was that under the agreement of the parties, which was to be incorporated in the written agreement, the Nash heirs were to receive one-half the royalty. This was denied by the attorney for the Harrells, who testified that he informed them during the negotiations that the Phillips leases provided for a one-fourth royalty, and that he at no time agreed to divide the royalty equally. In this he was contradicted by a disinterested witness, an attorney, who testified that an equal division of the royalty was agreed upon and that it was first suggested by the attorney for the Harrells. This attorney at the time officed with the attorney for the heirs, but at the time of trial was not associated with him. The testimony of the attorney for the Harrells was not corroborated, but F. O. Harrell testified that in discussing the matter with his attorney, he declined to give more than 1/16 of the oil and gas in the settlement.

The rule of law announced in the cases cited by the Harrells is the settled rule in this state. But the rule does not require the evidence in such cases to be free from conflict or controversy. Davidson v. Bailey, 53 Okla. 91, 155 P. 511; Gault v. Spears, 125 Okla. 126, 256 P. 515; 23 R. C. L. 369; 53 C. J. 1036. Due regard must be given to the

fact that the trial judge saw the witnesses, and observed their demeanor while testifying, and his judgment as to the credibility of the witnesses and the weight of the evidence is entitled to great weight. Guinan v. Readdy, 79 Okla. 111, 191 P. 602; Tescier v. Goyer, 72 Okla. 137, 181 P. 503; Hercules Gasoline Co. v. Security Ins. Co., 122 Cal. App. 499, 10 P. 2d 128; Home & Farm Co. of California v. Freitas, 153 Cal. 680, 96 P. 308.

The testimony of the Nash heirs and their attorney is plain, positive, reasonable, and free from uncertainty. It is corroborated by the testimony of the only disinterested witness produced. The contradiction of these witnesses by the attorney for the Harrells, and the supporting evidence of F. O. Harrell, was not accepted by the trial court, the finding being at variance therewith, and from the record we cannot say that the finding is wrong. Therefore, accepting the evidence of the heirs as true, they have established their case by clear, unequivocal, and decisive proof. Whittaker v. White, 169 Okla. 336, 37 P. 2d 247.

The Harrells in this contention urge that they never intended to give the Nash heirs more than 1/16 of the royalty, so that the mistake was not mutual, and that therefore the minds of the parties never met, and the trial court by its judgment in effect made a new contract between the parties. They say that where only one party is mistaken as to the terms of the contract, the remedy is cancellation and not reformation. They cite O'Neal v. Harper, 182 Okla. 52, 75 P. 2d 789; Holcomb & Hoke Mfg. Co. v. Jones, 102 Okla. 175, 228 P. 968, and other cases, in support of this argument. Under the evidence above set out there is no room for the application of the rule announced in those decisions. The applicable rule is that announced in 53 C. J. 949, that "where through ignorance or mistake on one side and fraud or inequitable conduct on the other the instrument does not accurately state the agreement entered into, its reformation is authorized." The statement is supported by a citation of many cases. See Frost v. Reagon, 32 Okla. 849, 124 P. 13; 23 R. C. L. 331; Pomeroy's Eq. Jur. (5th Ed.) section 870.

Affirmed.

RILEY, OSBORN, BAYLESS, GIBSON, DAVISON, and ARNOLD, JJ., concur. WELCH, C. J., and CORN, V. C. J., absent.