Pauline MESSINGER, Plaintiff in Error,

v.

Mollie L. MESSINGER, Defendant in Error.

No. 37997.

Supreme Court of Oklahoma.

Dec. 16, 1958.

Rehearing Denied March 10, 1959.

Application for Leave to File Second
Petition for Rehearing Denied
July 21, 1959.

Stevenson, Huser & Huser, Holdenville, for plaintiff in error.

Hamilton & Hamilton, Sandlin & Daugherty, Holdenville, for defendant in error.

WILLIAMS, Justice.

This action was brought by Pauline Messinger, hereinafter referred to as plaintiff, against Mollie L. Messinger, hereinafter referred to as defendant, to quiet title to a ten acre tract of real property located adjacent to the City of Holdenville in Hughes County, Oklahoma.

Plaintiff's petition alleged in substance: that plaintiff is the owner of the described real property; that in April, 1952, R. P. Messinger was the record owner of said real property and lived and resided thereon with his wife, Mollie L. Messinger; that in April, 1952, Robert P. Messinger, joined by his wife, defendant Mollie L. Messinger, made, executed and delivered to Clyde A. Messinger, their son, their warranty deed conveying to said Clyde A. Messinger, all of their right, title and interest in and to said real property, subject to and with a

reservation of a place of abode thereon during the lives of the grantors; that Clyde A. Messinger died testate on April 26, 1955, seized and possessed of the title to said real property and left a will devising all of his right, title and interest therein to this plaintiff, which will was duly admitted to probate in the County Court of Hughes County; that said real property was operated by said Robert P. Messinger as a nursery, but that for many years prior to his death, Robert P. Messinger was an invalid and Clyde A. Messinger, his son, remained at home, operated and improved the nursery and cared for his said father; that plaintiff and Clyde A. Messinger continued to operate said nursery and to look after and attend to the needs and comforts of his father; that Clyde A. Messinger and this plaintiff expended considerable sums of money for the purpose of operating the nursery, building improvements thereon and retiring the mortgage indebtedness against the same; that Robert P. Messinger died on June 29, 1953, and at the time of his death, Clyde A. Messinger was in possession of the above mentioned deed and the owner of said real property subject to the reservation above mentioned; that Clyde A. Messinger was stricken with an incurable malignancy and compelled to undergo medical treatment and hospitalization in January, 1955, and as a result was unable to carry on said nursery business; that as a result of his affliction, Clyde A. Messinger and plaintiff became impoverished and destitute; that defendant represented to plaintiff that the property above mentioned should be sold and converted into cash to care for the pressing needs and debts and that if plaintiff would turn the deed over to defendant she would sell the property; that while plaintiff was beside herself with anxiety, and relying upon defendant's representation that the property would be sold and financial relief afforded Clyde A. Messinger and his family, plaintiff surrendered the above mentioned deed to defendant during the first part of February, 1955, for that purpose; that on April 26, 1955, Clyde A. Messinger died; that on June 21, 1955, the plaintiff filed petition in the county court to probate the will of Clyde A. Messinger; that thereafter and on July 7, 1955, over two years after the death of Robert P. Messinger, defendant filed for probate in the county court an instrument denominated the last will and testament of Robert P. Messinger, deceased, bearing date of May 11, 1944, which she had withheld up until that time, and according to which Robert P. Messinger had devised his entire estate to said defendant; that in her petition for probate of said will and in the general inventory and appraisement filed in said court in said cause, defendant alleges the above real property belongs to the estate of Robert P. Messinger, deceased, and has caused a final decree to be entered in said cause distributing the entire estate of Robert P. Messinger to said defendant pursuant to said will; that the surrender of the deed above mentioned to said defendant by this plaintiff was ineffective to transfer title and was without force and in no way constituted transfer of title to said' property; that Clyde A. Messinger at no time ever executed a valid deed of conveyance divesting himself of his title to said property and that plaintiff having never divested herself of her title thereto is now the owner thereof; that all of the above mentioned acts and representations of the defendant and the withholding of the will of Robert P. Messinger, deceased, and not offering the same for probate until after defendant had regained possession of the deed to Clyde A. Messinger, was a scheme to defraud plaintiff of her right, title and interest in and to said property and all the money expended by plaintiff thereon.

Defendant answered by verified general denial and specific denial of the execution of the deed alleged in plaintiff's petition.

Upon trial of the cause, the court made and entered findings of fact and conclusions of law and rendered judgment for defendant, from which plaintiff has perfected this appeal.

As her first and second propositions of error, plaintiff asserts that the

findings of fact and conclusions of law made and filed by the trial court are insufficient and inadequate to constitute special findings and conclusions of law and too indefinite and uncertain for judicial interpretation, and that the findings of fact made by the trial court are clearly against the weight of and contrary to and in disregard of the overwhelming evidence, and the conclusions of law are without foundation of fact. These contentions seem to be well taken. The only finding of fact pertaining to any issue in this case made by the trial court is as follows:

"That the execution delivery of a purported deed to the premises from Robert P. Messinger and Mollie L. Messinger in April of 1952 to Clyde A. Messinger has been denied under verified answer by Mollie L. Messinger, defendant in this case, and the court finds that the evidence of the execution delivery, and even the contents, are not clear, and the plaintiff has failed to sustain the burden imposed on her in every particular clearly, and the proof is insufficient to sustain her claim."

We are of the opinion that such finding is too general to meet the requirements of 12 O.S.1951 § 611. It amounts to no more than a general finding in favor of defendant. The object of the statute is to enable the parties to have placed on the record the facts upon which the rights litigated depend, as well as the conclusions of law which the court drew from the facts found, so that exception may be taken to the views of the trial court as to the law involved in the trial. Coleman v. James, 67 Okl. 112, 169 P. 1064; Allen v. Wildman, 38 Okl. 652, 134 P. 1102.

 Furthermore, such finding is not supported by the evidence but on the contrary is against the clear weight of the evidence. Plaintiff had the burden of proving the deed relied upon by her by clear and convincing evidence. Norton v. Moore, Okl., 261 P.2d 196; Wilcox v. Wilcox, 198 Okl. 370, 178 P.2d 874. Such rule, however, does not require the evidence to be free from conflict or controversy. Harrell v. Nash, 192 Okl. 95, 133 P.2d 748; Davidson v. Bailey, 53 Okl. 91, 155 P. 511.

 In ordinary cases of equitable cognizance, the findings of the trial court will not be disturbed on appeal unless clearly against the weight of the evidence, but where, as here, a particular fact is required to be established by proof of a certain degree or character, the two rules must be taken and considered together, and in such cases this court upon appeal will weigh the evidence and determine whether or not the proof conforms to the required standard. Norton v. Moore, supra; McCrory v. Evans, 192 Okl. 649, 138 P.2d 823. Accordingly, we have carefully read and weighed the evidence as shown by the record herein, and are of the opinion and hold that plaintiff has sustained the burden of establishing the deed in question by clear and convincing evidence.

Plaintiff introduced direct evidence of all the allegations in her petition, most of which was given by disinterested witnesses. James W. Rodgers, a long time member of the Hughes County Bar in Holdenville, Oklahoma, testified that he prepared a statutory form warranty deed conveying the property in question to Clyde A. Messinger, which deed was executed by Robert P. Messinger and Mollie L. Messinger in his presence in the spring of 1952, and that he took their acknowledgement to such deed as a notary public.

Plaintiff, Pauline Messinger, testified that Clyde Messinger showed her the deed in question before they were married and that after they were married he brought the deed to their home where it was kept in a drawer in the kitchen cabinet along with other legal papers and cancelled checks; that the deed was made to Clyde A. Messinger and bore the signature of Robert P. Messinger and Mollie L. Messinger and covered the 10 acre plant farm, which is the property here involved; that such deed remained in their home until just before the death of Clyde A. Messinger when she delivered it to Mollie L. Messinger upon the representation that it was

necessary to have the deed in order to sell the property and secure money with which to provide care and support for Clyde A. Messinger and plaintiff; that had she known they were not going to sell the place and that Mollie L. Messinger was going to produce a will from Robert P. Messinger wherein Mollie L. Messinger was named as sole devisee of the entire estate of Robert P. Messinger, deceased, which will was never offered to probate until after she had obtained possession of the deed and until after Clyde A. Messinger died, plaintiff would never have delivered the deed in question to Mollie L. Messinger; that the property in question has never been sold and the deed has never been returned to plaintiff. Plaintiff also testified that at the time she and Clyde A. Messinger were married, he was operating the plant farm known as the Holdenville Plant Farm, located on the property here involved; that his father was an invalid and that after she and Clyde were married he continued to operate such plant farm and bought the plants for the place; that following their marriage, she furnished money for the purchase of plants and operation of the plant farm, for the building of a green house thereon, and for payments on the mortgage against the property.

Carol Christian, pastor of the Capitol Heights Missionary Baptist Church in Holdenville, Oklahoma, testified that he was in the home of plaintiff and Clyde Messinger around the first of February, 1955, on an occasion when there were several ladies in the home, including defendant, Mollie L. Messinger; that defendant brought up the question of a deed, saying she wanted the deed, if they could find it, so she could sell the plant farm and give the money to spend on Clyde while he was still living; that several of the ladies then searched for the deed at defendant's request, and one of them found the deed, but did not give it to defendant nor let defendant know that she had found it; that he saw the deed; that it was a warranty deed signed by Robert Messinger and Mollie Messinger, but he couldn't remember the

middle initials, conveying 7 or 10 acres to Clyde Messinger, and was notarized, but not recorded; that it was notarized by a Holdenville attorney, but he couldn't remember the name of the notary; that he saw no reservation in the deed, that it was just a warranty deed that was notarized, but not recorded.

Mrs. Carol Christian, wife of the pastor, testified in substance that she knew Pauline and Clyde Messinger; that she was in the home of Clyde and Pauline Messinger just before they brought Clyde back from Oklahoma City about the first part of February, 1955, and that at that time Mrs. Kibby and Pauline's mother and father and Theda Jean, Pauline's sister, and her other sister whose name witness did not know, and Mrs. Davenport were in the home of Pauline and Clyde where they had gone to clean up the house and change the beds around so that Clyde could be brought back and that's why the women were over there; that she heard the question of a deed brought up at that time and that Mollie L. Messinger said that she would like to get the deed and sell the place and give Clyde his part before he died; that that's all she heard; that she did not see the deed but heard them talk about having found it but did not know who found it.

Nelly Kibby testified in substance that she was one of the ladies who was in the home of Pauline and Clyde Messinger around the first of February, 1955, before they brought Clyde back from the hospital, and they were cleaning the house; that defendant, Mollie L. Messinger, said that Clyde and Pauline had this deed, and that she needed it to take to a lawyer that day so she could sell the farm out there so Clyde could have his part while he was in the hospital and needed the money; that the witness hunted through Pauline's papers until she found the deed; that she found the deed in the china closet in the dining room; that she looked at the deed; that she saw Clyde's name and Mr. and Mrs. Messinger's signatures on the deed; that when she saw that only Clyde's name was on it and that Clyde's brother's name

was not on it, she decided it wasn't any of her business to give it to anybody, so she handed it to Pauline's mother and that was the last she saw of it.

Lucille Davenport testified in substance that she was in the home of Clyde and Pauline Messinger about the first part of February, 1955, and that she had gone over there to change the bed out of the back room into the front room; that Mrs. Kibby and Mrs. Christian and Mrs. Russell and her sister were there; that Reverend Carol Christian was in and out and Mrs. Mollie L. Messinger was there and that a discussion came up about the papers there that day; that Mollie L. Messinger asked her if she knew where the deed to her place was that had been made to Clyde; that the witness began to help hunt for this deed; that witness did not find it but she was with Nell Kibby when Nell Kibby found it; that she looked at the deed and saw what it was; that it was a warranty deed and was made to Clyde Messinger and was signed by Mr. and Mrs. Messinger; that it was notarized; that she saw Mr. Rodger's name on it; that they gave the deed to Pauline's mother and that's the last she saw of it; that Mollie L. Messinger said she wanted the deed because she was going to sell the property and that she had to have the deed before she could sell the property and that she wanted to give it to Clyde so he could have some benefit of it before he died; that Mrs. Messinger asked them to help her hunt the deed and that when they found it and learned that the deed was made to Clyde Messinger only that she and Mrs. Kibby decided that they ought not to turn the deed over to anyone except Pauline or some member of her family; that Clyde's name was in the deed; that it was a warranty deed and that she saw the signatures on the bottom of it and that the deed was notarized and that she saw Mr. Rodgers' name on it.

Rube Russell testified in substance that he was the father of plaintiff; that he was in the home of his daughter, Pauline, and Clyde Messinger on or about the first of February, 1955; that several people were there including Nell Kibby, Lucille Davenport, Theda Jean and Brother Christian; that his wife was there; that a discussion came up about some papers while he was there; that a search was made for a deed to the little place out there that the greenhouse was on and that they found the deed and that Theda (his daughter) showed the deed to him a short time afterwards, down town, and that he saw the deed; that he was over near the court house when he met his daughter, Theda, and Reverend Christian, and that they showed him the deed; that it was a warranty deed, said "One Dollar and Love and Affection" as the consideration, was part of what he remembered, and that it bore the signatures Robert P. Messinger and Mollie L. Messinger and that the deed was made to Clyde; that he didn't remember the numbers of the land but that it covered some acreage and that as well as he could remember something like 10 acres; that he also saw Mr. Rodgers' name on the deed as the notary public.

Plaintiff testified further that Theda Jean, her sister, gave the deed in question to her after it was found by the ladies on the day concerning which they testified, and that it was the same deed which she had kept throughout the time of her marriage with Clyde Messinger; that it was the deed to the plant farm formerly owned by Robert P. Messinger on which Robert P. Messinger and Mollie L. Messinger resided, and that it was the deed which was made to Clyde and was the same deed that she and Clyde had had in their possession.

Defendant, Mollie L. Messinger, testified that no deed was ever executed by her to Clyde A. Messinger, but the effectiveness of such testimony was considerably lessened by the further testimony of defendant and by the admissions and statements made by her on cross-examination.

The type and amount of evidence in the case at bar is quite similar to that found in the case of Norton v. Moore, supra, in which this court found that plaintiff had sustained the burden of establishing the deed in question by clear and convincing

evidence, except that in the case at bar plaintiff's evidence is somewhat stronger and defendant's evidence somewhat weaker than that in Norton v. Moore, supra.

Plaintiff, having established her case by clear and convincing evidence, is entitled to judgment as prayed. The judgment is therefore reversed and the cause remanded with instructions to render judgment for plaintiff as prayed in her petition.

WELCH, C. J., and DAVISON, HALLEY, JOHNSON, BLACKBIRD, JACKSON and CARLILE, JJ., concur.

CORN, V. C. J., dissents.